UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20484-CIV-MORENO/O'SULLIVAN

WITKIN DESIGN GROUP, INC.,

          Plaintiff,

vs.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

          Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER comes before the Court on Travelers' Motion for Summary Judgment Regarding the Duty to Defend (DE# 25, 9/29/16) and Plaintiff, Witkin Design Group, Inc.'s Motion for Summary Judgment Regarding the Duty to Defend (DE# 29, 10/11/16). The motions were referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation. <u>See</u> Order of Referral to Magistrate Judge O'Sullivan for All Pretrial Proceedings (DE# 41, 11/17/16). Having reviewed the applicable filings and the law, the undersigned respectfully RECOMMENDS that Travelers' Motion for Summary Judgment Regarding the Duty to Defend (DE# 25, 9/29/16) be **GRANTED** and Plaintiff, Witkin Design Group, Inc.'s Motion for Summary Judgment Regarding the Duty to Defend (DE# 29, 10/11/16) be **DENIED** for the reasons stated herein.

## BACKGROUND[1]

The action was initially filed in state court by Witkin Design Group, Inc. (hereinafter "Witkin") against its insurer (Travelers Property Casualty Company of America (hereinafter "Travelers")) and the agent that procured insurance policies from Travelers (Brown & Brown of Florida, Inc. (hereinafter "Brown & Brown")). See Petition for Declaratory Relief and Complaint (DE# 1-2 & 1-3, 2/9/16) (hereinafter "Complaint"). The subject policies are a Commercial General Liability Policy, Policy No. XJ680-8814X512-TIL-12 ("CGL Policy") and a Commercial Excess Liability Insurance Policy, Policy No. CUP-1A865074-12-47 ("Umbrella Policy"), (collectively, the "Subject Policies").

The Complaint alleged causes of action for declaratory judgment of coverage under the policies (Count I), breach of contract against Travelers (Count II), breach of fiduciary duty against Brown & Brown (Count III) and negligence in failing to procedure proper insurance against Brown & Brown (Count IV). See Complaint (DE# 1-2 & 1-3, 2/9/16).

On February 2, 2016, Travelers removed the instant action to this Court. On April 17, 2016, this Court dismissed without prejudice the plaintiff's claims (Counts III and IV) against Brown & Brown. See Order Denying Plaintiff's Motion to Remand and Granting Defendant Travelers Property Casualty Company of America's Motion to Dismiss Defendant Brown & Brown of Florida, Inc. (DE# 17, 4/18/16). Thus, the only remaining

---

[1] To avoid confusion, the undersigned will use the page numbers automatically assigned by the Court's CM/ECF system when citing to the record and where there are no paragraph numbers available.

claims are for declaratory judgment of coverage under the policies (Count I) and breach of contract against Travelers (Count II).

On September 29, 2016, Travelers moved for summary judgment on the issue of duty to defend and the duty to indemnify. See Travelers' Motion for Summary Judgment Regarding the Duty to Defend (DE# 25, 9/29/16). Witkin filed its response in opposition on October 17, 2016. See Plaintiff's Corrected Response to Defendant's Motion for Summary Judgment Regarding Duty to Defend (DE# 32, 10/17/16). Travelers filed its reply on October 27, 2016. See Travelers' Reply in Support of Its Dispositive Motion (DE# 34, 10/27/16).

Witkin filed a cross motion for summary judgment, also on the duty to defend, on October 11, 2016. See Plaintiff, Witkin Design Group, Inc.'s Motion for Summary Judgment Regarding the Duty to Defend (DE# 29, 10/11/16). Travelers filed a response in opposition on October 28, 2016. See Traveler's Response in Opposition to Witkin's Motion for Summary Judgment (DE# 35, 10/28/16). Witkin filed a reply on November 7, 2016. See Plaintiff, Witkin's Reply in Support of Motion for Summary Judgment (DE# 36, 11/7/16).

This matter is ripe for adjudication.

## FACTS[2]

**1.      The Subject Policies**

Travelers issued two insurance policies the CGL Policy and the Umbrella Policy.

_____

[2] On cross-motions for summary judgment, the Court will view the facts in the light most favorable to the non-moving party when addressing the merits of each motion.

The parties do not dispute that Witkin was an insured under the Subject Policies.[3]

The CGL Policy contains a professional services ("PS") exclusion which states:

1. The following is added to Paragraph **2. Exclusions of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY in COVERAGES (Section I):**

**Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render any "professional services".

2. The following is added to Paragraph **2. Exclusions of COVERAGE B PERSONAL INJURY, ADVERTISING INJURY AND WEB SITE INJURY LIABILITY** of the **WEB XTEND LIABILITY**
Endorsement:

**Professional Services**

"Personal injury", "advertising injury" or "web site injury" arising out of the rendering of or failure to render any "professional services".

3. The following is added to **DEFINITIONS (Section V):**

"Professional services" means any service requiring specialized skill or training including the following:

a. Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report,

---

[3] Witkin devotes some space in its response in opposition to Travelers' motion for summary judgment to the fact that it was a named insured under both policies. See Plaintiff's Corrected Response to Defendant's Motion for Summary Judgment Regarding the Duty to Defend (DE# 32 at 1-3, 10/17/16). However, Travelers is not raising this as a reason for its determination that there was no coverage. Rather, Travelers' position is based on the professional services exclusions contained in both the CGL Policy and the Umbrella Policy. See April 30, 2015 Letter from Travelers (DE# 32-2 at 4-5, 10/17/16) (stating "[i]t is our position that the allegations about Witkin's involvement in the design and planning of the intersection meet the definition of 'professional services' as defined above. Coverage therefore is specifically excluded" and stating "[i]t is our position there also is no coverage for this lawsuit under the Commercial Excess Liability Coverage Part since the allegations in the Second Amended Complaint meet the definition of 'professional services.'").

> survey, field order, change order, design, drawing,
> specification, recommendation, warning, permit application,
> payment request, manual or instruction;
>
> b. Supervision, inspection, quality control, architectural,
> engineering or surveying activity or service, job site safety,
> construction contracting, construction administration,
> construction management, computer consulting or design,
> software development or programming service,
> or selection of a contractor or subcontractor; or
>
> c Monitoring, testing, or sampling service necessary to
> perform any of the services included in a. or b. above.

All other terms of your policy remain the same.

CGL Policy (DE# 29-1 at 139, 10/11/16) (bold in original).

The Umbrella Policy contains a similar exclusion:

> 1. The following is added to Paragraph **3. Exclusions of COVERAGE A
> BODILY INJURY AND PROPERTY DAMAGE; and COVERAGE B
> PERSONAL INJURY AND ADVERTISING INJURY in COVERAGES
> (Section I):**
>
> **Professional Services**
>
> "Bodily injury", "property damage", "personal injury" or "advertising injury"
> arising out of the rendering of or failure to render any "professional
> services".
>
> 2. The following is added to **DEFINITIONS (Section V):**
>
> "Professional services" means any service requiring specialized skill or
> training including the following:
>
> > a. Preparation, approval, provision of or failure to prepare,
> > approve, or provide any map, shop drawing, opinion. report,
> > survey, field order, change order, design, drawing,
> > specification, recommendation, warning, permit application,
> > payment request, manual or instruction;
> >
> > b. Supervision, inspection, quality control, architectural,
> > engineering or surveying activity or service, job site safety,

construction contracting, construction administration,
construction management, ,computer consulting or design,
software development or programming service, or selection
of a contractor or subcontractor; or

c. Monitoring, testing, or sampling service necessary to
perform any of the services included in a. or b. above.

All other terms of your policy remain the same.

Umbrella Policy (DE# 29-2 at 37, 10/11/16) (bold in original).

Also relevant to the Court's analysis is the products-completed operations

("PCO") language the policies. The CGL Policy states in its definitions section:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from
premises you own or rent and arising out of "your product" or "your work"
except:

(1) Products that are still in your physical possession; or

(2} Work that has not yet been completed or abandoned.
However, "your work" will be deemed completed at the
earliest of the following times:

(a) When all of the work called for in your
contract has been completed.

(b) When all of the work to be done at the job
site has been completed if your contract calls
for work at more than one job site.

(c) When that part of the work done at a job
site has been put to its intended use by any
person or organization other than another
contractor or subcontractor working on the
same project.

Work that may need service, maintenance, correction, repair
or replacement, but which is otherwise complete, will be
treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

CGL Policy (DE# 29-1 at 111-112, 10/11/16). The CGL Policy defines the term "your work" to:

a. Mean[ ]:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or Instructions.

Id. at 112-113.

The  Umbrella Policy states:

a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession: or

(2) Work that has not yet been completed or abandoned.

7

b. "Your work" will be deemed completed at the earliest of the following times:

>   (1) When all of the work called for in your contract has been completed.

>   (2) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

>   (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

>   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. "Products-completed operations hazard" does not include "bodily injury" or property damage" arising out of:

>   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by any insured; or

>   (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

Umbrella Policy (DE# 29-2 at 20-21, 10/11/16). The term "your work" is defined under

the Umbrella Policy to:

a. Mean[ ]:

>   (1) Work or operations performed by you or on your behalf; and

>   (2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work·; and
>
> (2) The providing of or failure to provide warnings or instructions.

Id. at 22.

## 2.      The Underlying Wrongful Death Action

On March 28, 2013, Jose A. Scott, an eleven-year-old child, was struck and killed by a vehicle at the intersection of S.W. 135th Terrace and 136th Avenue in Miramar, Florida. The intersection was located  inside a private residential community. The estate of the decedent filed a lawsuit against the driver of the vehicle and others, including Witkin, in the 17th Judicial Circuit Court in and for Broward County, Florida (hereinafter "Wrongful Death Action").

The Second Amended Complaint[4] in the Wrongful Death Action (hereafter "SAC") alleged that:

> 14.      WITKIN, was the landscape architect for the residential community known as Vizcaya Community Association, Inc. which includes the intersection located at S.W. 135th Terrace and 136th Avenue in Miramar, Broward County, Florida.
>
> ***

---

[4]A Third Amended Complaint was filed in the Wrongful Death Action on or about October 29, 2015. See Wiktin's Reply (DE# 36-3, 11/7/16). The claims against Witkin set forth in the Third Amended Complaint are nearly identical to those previously alleged in the Second Amended Complaint. Because both Witkin and Travelers refer to the Second Amended Complaint as the "underlying complaint," see Witkin's Motion for Summary Judgment (DE# 29 at 3, 10/11/16); Traveler's Motion for Summary Judgment (DE# 25 at 5, 9/29/16), and both the Second Amended Complaint and the Third Amended Complaint are nearly identical as they pertain to Witkin, the undersigned will only refer to the Second Amended Complaint in this Report and Recommendation.

377.   At all times material to this Complaint, Defendant, WITKIN DESIGN GROUP, INC. ("WITKIN"), had engineered, surveyed, planned, control, constructed and developed that portion of the residential community at the intersection located at S.W. 135th Terrace and 136th Avenue in Broward County, Florida, in a manner as to create a deceptive and confusing condition by creating, designing and maintaining the intersection so as to block the view of the intersecting street and by forcing motorists to turn onto S.W. 136th Avenue into the wrong lanes of travel. The effect of such negligence was to cause unreasonable risk of harm and danger to pedestrians, bicyclists, motorists, skaters and others who might be located on S.W. 136th Avenue.

378.   In addition thereto, WITKIN engineered, surveyed, planned, designed, constructed and maintained the intersection of S.W. 135th Terrace and S.W. 136th Avenue in an unreasonably dangerous condition and breached its duty of care by any or all of the following negligent acts:

A.   Creating an unreasonably dangerous condition by causing S.W. 135th Terrace to be a one-way street with a negligently constructed stop bar which crossed the entire length of the street causing vehicles stopping at the bar to proceed in the wrong lanes of travel;

B.   By creating the intersection in an unreasonably dangerous condition by allowing inappropriate space and distance between the intersections' angled approach and its relationship to the stop sign forcing vehicles into the wrong lanes of travel;

C.   Creating the intersection in an unreasonably dangerous condition by placing palm trees in a manner so that when a motorist is stopped at the intersection the view is blocked precluding motorists from viewing pedestrians adjacent to the intersection;

D.   Creating the intersection in an unreasonably dangerous condition by placing a fire hydrant in a manner so that when a motorist is stopped at the intersection the view is blocked precluding motorists from viewing pedestrians adjacent to the intersection;

E.   Creating the intersection in an unreasonably dangerous condition by placing signage in a manner so that when a motorist is stopped at the intersection the view is blocked precluding motorists from viewing pedestrians

10

adjacent to the intersection;

F.      Creating an unreasonably dangerous condition by designing, constructing and maintaining the intersection so that it did not appear to be inclusive of a one-way street causing unreasonable risk of harm to pedestrians located adjacent to the intersection;

G.      By failing to warn or adequately warn pedestrians of the intersection's traffic flow causing pedestrians to be unaware of the intersection's dangerous propensity to force motorists into the wrong lanes of travel;

H.      By failing to design, create and maintain the intersection of S.W. 135th Terrace and S.W. 1361h Avenue to comply with existing building ordinances and codes concerning proper sight lines;

I.      By constructing and designing an intersection that precluded motorists traveling through the intersection from seeing pedestrians located adjacent to the intersection; and

J.      By failing to otherwise properly create an intersection free from unreasonable risk of danger.

SAC (DE# 1-2 at  ¶¶14, 377-78, 2/9/16). The SAC further alleges that Jose A. Scott sustained fatal injuries "[a]s a direct and proximate result" of Witkin's negligence. Id. at ¶379.

## **STANDARD OF REVIEW**

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(a), which states, in relevant part, as follows:

A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). That is, "[t]he moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323) (internal quotation marks omitted).

In assessing whether the moving party has satisfied its burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994). "When evaluating cross-motions for summary judgment, the Court analyzes each individual motion on its own merits and thus views the facts on each motion in the light most favorable to the respective nonmovant." Adega v. State Farm Fire & Cas. Ins. Co., No 07-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).  If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Despite these presumptions in favor of the non-movant, the Court must be mindful of the purpose of Rule 56, which is to eliminate the needless delay and expense to the parties and to the Court caused by an unnecessary trial. Celotex, 477 U.S. at 322-323.

12

Consequently, the non-moving party cannot merely rest upon his or her bare assertions, conclusory allegations, surmises or conjectures. Id.

As the Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id. at 322-323. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

## ANALYSIS

The parties filed cross-motions for summary judgment. In its motion, Travelers asks the Court to hold that Travelers has no duty to defend or indemnify Witkin. Conversely, Witkin moves for summary judgment in its favor on Travelers' duty to defend Witkin in the underlying Wrongful Death Action. See Plaintiff, Witkin Design Group, Inc.'s Motion for Summary Judgment Regarding the Duty to Defend (DE# 29, 10/11/16). The undersigned will address these motions below.

**1.    Applicable Law**

The instant action was removed from state court based on diversity jurisdiction and the parties to do not appear to dispute that Florida law governs this case.

"In interpreting insurance contracts, the Florida Supreme Court has made clear

13

that 'the language of the policy is the most important factor.'" <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F.3d 1270, 1274 (11th Cir. 2008) (quoting <u>Taurus Holdings, Inc. v. United States Fid. and Guar. Co.</u>, 913 So.2d 528, 537 (Fla. 2005)). "Under Florida law, insurance contracts are to be construed 'in accordance with the plain language of the policies as bargained for by the parties.'" <u>State Nat. Ins. Co. v. White</u>, 482 F. App'x 434, 438 (11th Cir. 2012) (<u>per curiam</u>) (quoting <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So. 2d 29, 34 (Fla. 2000)). The "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." <u>Anderson</u>, 756 So. 2d at 34 (citations omitted). "[I]nsurance coverage must be construed broadly and its exclusions narrowly." <u>Hudson v. Prudential Prop. & Cas. Ins. Co.</u>, 450 So. 2d 565, 568 (Fla. 2d DCA 1984). Moreover, "any ambiguity [in the insurance contract] is strictly construed against the drafter and liberally in favor of the insured." <u>Allstate Floridian Ins. Co. v. Farmer</u>, 104 So. 3d 1242, 1246 (Fla. 5th DCA 2012) (citations omitted).

## 2.     Whether Travelers Has a Duty to Defend Witkin in the Underlying Wrongful Death Action

The CGL policy provides three types of coverage: Coverage A (bodily Injury and property damage liability), Coverage B (personal and advertising injury liability) and Coverage C (medical payments). <u>See</u> CGL Policy (DE# 29-1 at 98-104, 10/11/16). The Umbrella Policy provides two types of coverage: Coverage A (bodily injury and property damage liability) and Coverage B (personal injury and advertising injury liability). <u>See</u> Umbrella Policy (DE# 29-2 at 10, 10/11/16).

At issue in this case is Coverage A (bodily Injury and property damage liability)

under both policies. In the CGL Policy, Coverage A provides that:

> [The insurer] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . However, [the insurer] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

CGL Policy (DE# 29-1 at 98, 10/11/16). The Umbrella Policy contains the following

provision:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

Umbrella Policy (DE# 29-2 at 10, 10/11/16).

### A.    Products-Completed Operations Provisions in the CGL Policy and Umbrella Policy

At the outset, the undersigned will address Witkin's argument that it "purchased

[products] completed-operations coverage from Travelers." Plaintiff, Witkin Design

Group, Inc.'s Motion for Summary Judgment Regarding the Duty to Defend (DE# 29 at

11, 10/11/16); see also Plaintiff's Corrected Response to Defendant's Motion for

Summary Judgment Regarding Duty to Defend (DE# 32 at 19, 10/17/16). Notably,

Witkin does not cite to an actual coverage provision in either the CGL Policy or the

Umbrella Policy for products-completed operations (PCO). Rather, Witkin cites to the

Declarations Page and the definitions sections of the Subject Policies. See Plaintiff,

Witkin Design Group, Inc.'s Motion for Summary Judgment Regarding the Duty to

Defend (DE# 29 at 6-8, 10/11/16).

15

In Sparta Ins. Co. v. Colareta, 990 F. Supp. 2d 1357 (S.D. Fla. 2014), the

insureds raised an argument similar to the one advanced by Witkin. The insureds in

Sparta relied on "the Declarations Page and Coverage Schedule of the policy" and

argued that "the CGL contain[ed] two separate types of coverage - 'General' and

'Products-Completed Operations Hazard' coverage. Id. at 1364. The Court found that

neither the Declarations Page nor the Coverage Schedule provided proof of products-

completed operations coverage "separate and apart from that provided by the CGL." Id.

With respect to the declarations page, this Court stated:

> Defendants correctly note that the Declarations Page of the policy
> designates a separate limit of coverage for "Products/Completed
> Operations." ECF No. 37–3 at 13. And **that is just what it is – a different
> applicable limit, not a separate form of coverage.** For claims falling
> under Products/Completed Operations, the $2,000,000 aggregate limit of
> liability applies. In other words, $2,000,000 is the maximum amount that
> Sparta will pay to settle those claims. No **indication exists that the
> products/completed operations hazard functions as a distinct type of
> coverage subject to different terms under the policy**.

Id. (emphasis added). As to the Coverage Schedule, this Court stated:

> the Coverage Schedule is simply a breakdown of the overall premium
> paid under the CGL. Indeed, the sum of the premiums paid for each
> classification in the Coverage Schedule totals the aggregate premium
> paid under the CGL: $3,061. Again, this provides no evidence that claims
> classified as products-completed operations hazards are subject to
> distinct terms under the CGL.

Id. at 1364-65 (footnote omitted). Finally, this Court addressed the products-completed

operations hazard provision in the policy, noting that it was "listed only in the

'Definitions' section of the policy and [wa]s not designated as a type of coverage." Id. at

1365. This Court thus concluded that "any claim falling under the definition of 'products-

completed operations hazard' **[wa]s subject to the terms and limitations of the**

**coverage portion to which it applies. Because 'products-completed operations hazard' [wa]s defined as applying to bodily injury and property damage, it necessarily [fell] under Coverage A of the CGL.**" Id. at 1365 (emphasis added). This Court further noted:

> Section II, which list[ed] the policy's limits of insurance, state[d] as follows: "The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of 'bodily injury' and 'property damage' included in the 'products-completed operations hazard.'" . . . **The fact that the policy set[ ] a limit on [the insurer]'s liability under Coverage A with respect to products-completed operations hazards [made] clear that the products-completed operations hazard clause [fell] under the terms of Coverage A and [was] not a free-standing form of coverage. As a result, any determination on [the insurer]'s liability under the CGL in the underlying litigation must necessarily be predicated upon an interpretation of the coverage afforded under Coverage A as whole**, not merely the products-completed operations hazard portion.

Id. at 1366 (emphasis added).

The Subject Policies in the instant case, like the policy in Sparta, contain products-completed operations aggregate limits and list "Products-completed operations hazard" in the definitions sections of the policies. See CGL Policy (DE# 29-1 at 8, 111-113, 10/11/16); Umbrella Policy (DE# 29-2 at 3, 20-22, 10/11/16). As in Sparta, the Court should find that these provision in the CGL Policy and the Umbrella Policy do not provide for products-completed operations coverage separate and apart from the coverage provided under Coverage A (bodily Injury and property damage liability).[5] Thus, the exclusions applicable to Coverage A (bodily Injury and property

_____

[5] Because there is no products-completed operations coverage separate and apart from Coverage A (bodily Injury and property damage liability) under the Subject Policies, the Court does not need to determine whether any of the claims asserted in

damage liability) also apply to any products-completed operations.

The Court should similarly reject Witkin's argument that "[i]f the Professional Services Exclusions ('PS Exclusions') in Witkin's Policies applied even to Witkin's long-completed work and/or product, the $3 million of products-completed operations ('PCO') coverage that Travelers sold to Witkin would be illusory." Plaintiff, Witkin's Reply in Support of Motion for Summary Judgment (DE# 36, 11/7/16). As addressed by this Court in <u>Sparta</u>, the "designat[ion of] a separate limit of coverage for 'Products/Completed Operations.' . . .  is just what it is – a different applicable limit, not a separate form of coverage." <u>Sparta</u>, 990 F. Supp. 2d at 1364.

### B.   The Professional Services Exclusions under the CGL Policy and Umbrella Policy

Coverage A (bodily Injury and property damage liability) is subject to certain exclusions. Travelers argues that the Professional Services provisions in both the CGL Policy and the Umbrella Policy exclude coverage for the claims asserted against Witkin in the underlying Wrongful Death Action. Witkin maintains that at least some[6] of the claims asserted against it in the underlying Wrongful Death Action fall outside the

---

the SAC in the underlying Wrongful Death Action constitute products-completed operations.

[6] If even one claim asserted in the underlying Wrongful Death Action potentially falls within the policy, Witkin would be entitled to a defense of all of the claims asserted against it. This is because Florida law provides that "[a]n insurer 'duty to defend is distinct from and broader than the duty to indemnify . . . and if the [underlying] complaint alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit.'" <u>Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.</u>, 980 F.2d 1402, 1405 (11th Cir. 1993) (quoting <u>Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.</u>, 470 So.2d 810, 813-14 (Fla. 1st DCA 1985) (citations omitted and emphasis omitted).

18

professional services exclusion: "[t]he Underlying Complaint, on its face, alleges negligence by Witkin that does not qualify as 'professional services,' and negligence to which the applicability of the PS Exclusion is ambiguous." Plaintiff's Corrected Response to Defendant's Motion for Summary Judgment Regarding Duty to Defend (DE# 32 at 8, 10/17/16).

Florida law provides that if at least one of the claims in the underlying complaint is potentially covered under the policy, the insurer must provide a defense to all of the claims asserted against the insured. Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405 (11th Cir. 1993) (citing National Union Fire Insurance Co. v. Lenox Liquors Inc., 358 So.2d 533, 536 (Fla.1978)). Courts determine if an insurer has a duty to defend "by examining the allegations in the complaint filed against the insured" and "[i]f the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured." Id.

Witkin maintains that the Professional Services exclusions under the Subject Policies are inapplicable because "certain construction activities relating to the physical act of construction do not qualify as professional services." Plaintiff, Witkin's Reply in Support of Motion for Summary Judgment (DE# 36 at 6, 11/7/16) (emphasis omitted). Witkin notes that the PS Exclusions define "professional services" to include "construction contracting, construction administration, [and] construction management," but the SAC only alleges "that Witkin negligently 'constructed' the intersection where the accident occurred." Plaintiff's Corrected Response to Defendant's Motion for Summary Judgment Regarding Duty to Defend (DE# 32 at 11, 10/17/16); id. at 16-17 (noting that the PS Exclusions "list certain construction-related services that involve

19

specialized skill or training ('construction contracting, construction administration, [and] construction management'), but not the act of 'constructing' generally.").

The undersigned finds that the claims asserted against Witkin in the underlying Wrongful Death Action fall under the Professional Services exclusions in both policies. The CGL Policy excludes from coverage "'Bodily injury' or 'property damage' arising out of the rendering of or failure to render any 'professional services'." CGL Policy (DE# 29-1 at 139, 10/11/16).  The Umbrella Policy contains similar language. <u>See</u> Umbrella Policy (DE# 29-2 at 37, 10/11/16) (excluding from coverage "'Bodily injury', 'property damage', 'personal injury' or 'advertising injury' arising out of the rendering of or failure to render any 'professional services'."). The policies provide a non-exhaustive list of activities which constitute professional services. The CGL policy, for example, contains the following definition:

> "Professional services" means any service requiring specialized skill or training including the following:
>
> > a. Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;
> >
> > b. Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, **construction contracting, construction administration, construction management**, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or
> >
> > c Monitoring, testing, or sampling service necessary to perform any of the services included in a. or b. above.

CGL Policy (DE# 29-1 at 139, 10/11/16) (emphasis added); see also Umbrella Policy (DE# 29-2 at 37, 10/11/16). The fact that the word "construction" does not appear by itself in the non-exhaustive list of activities which constitute professional services does not mean that the act of construction is not a professional service. The policies define "Professional services" to mean "any service requiring specialized skill or training." CGL Policy (DE# 29-1 at 139, 10/11/16); see also Umbrella Policy (DE# 29-2 at 37, 10/11/16). "Whether an act results from the nature of a professional service is determined by focusing upon the particular act itself, as opposed to the character of the individual engaging in the act." Lindheimer v. St. Paul Fire & Marine Ins. Co., 643 So. 2d 636, 638 (Fla. 3d DCA 1994) (addressing professional services in the context of a professional liability insurance policy). The construction of an intersection is not an endeavor that would be undertaken by a lay person. Because the construction of an intersection is an activity that requires specialized skill or training, it constitutes a professional service under the policy and thus, the PS Exclusion applies.

Witkin also argues that "the professional services exclusion[ ] applies only to the 'rendering' of services in the present tense." Plaintiff, Witkin Design Group, Inc.'s Motion for Summary Judgment Regarding the Duty to Defend (DE# 29 at 2, 10/11/16). Witkin argues that the PS Exclusion does not apply because "the 'bodily injury' at issue in the Underlying Litigation did not occur 'at the time' that Witkin had any 'contractual responsibility for "professional services."'" Id. at 13. The undersigned disagrees with Witkin's position that the PS Exclusion only applies to the present tense rendering of professional services. The bodily injury at issue arose out of the rendering of a professional service, i.e. the construction of an intersection. Therefore, the PS

Exclusion applies.

Witkin's summary judgment motion is also premised on the purported existence of products-completed operations coverage. See Plaintiff, Witkin Design Group, Inc.'s Motion for Summary Judgment Regarding the Duty to Defend (DE# 29 at 2, 10/11/16). For the reasons already stated in this Report and Recommendation, the undersigned finds that the Subject Policies contain no products-completed operations coverage separate and apart from Coverage A (bodily Injury and property damage liability) and that in any event the exclusions to Coverage A (bodily Injury and property damage liability) would equally apply to any products-completed operations.

The undersigned further rejects Witkin's argument that "[n]either Policies' PS Exclusion has any bearing on PCO coverage, because the PS Exclusion endorsements of the Policies clearly state, 'All other terms of your policy remain the same.'" Plaintiff, Witkin Design Group, Inc.'s Motion for Summary Judgment Regarding the Duty to Defend (DE# 29 at 12, 10/11/16). If the PS Exclusion in the Subject Policies applies to Coverage A (bodily Injury and property damage liability), the PS Exclusion would equally apply to any products-completed operations. See Sparta, 990 F. Supp. 2d at 1366 (stating "[t]he products-completed operations hazard is relevant only with respect to [the insurer]'s limit of liability under the CGL. As a result, **if [the insureds]' claims are otherwise subject to exclusion under Coverage A, it matters not whether the claims fall under the products-completed operations hazard, as coverage will have already been deemed precluded.** ") (emphasis added).

Lastly, Witkin states "if, for the sake of argument, coverage was merely

ambiguous, the result would be the same, and Travelers would still be obligated

to provide coverage to Witkin." Plaintiff, Witkin Design Group, Inc.'s Motion for

Summary Judgment Regarding the Duty to Defend (DE# 29 at 19, 10/11/16). The

undersigned finds no ambiguity in the subject policies.

 In sum, under the plain language of the CGL Policy and Umbrella Policy, there is

no duty to defend because the professional services exclusion applies to all of the

claims asserted against Witkin in the underlying Wrongful Death Action.

**3. Whether the Court Should Also Enter Summary Judgment for Travelers on the Issue of Indemnity**

 Travelers also moves for summary judgment in its favor on the issue of

indemnity. <u>See</u> Travelers' Motion for Summary Judgment Regarding the Duty to Defend

(DE# 25 at 7-8, 9/29/16). Witkin notes that the instant action has been bifurcated and

only the duty to defend is presently at issue. Plaintiff's Corrected Response to

Defendant's Motion for Summary Judgment Regarding Duty to Defend (DE# 32 at 20,

10/17/16). Because the duty to defend is broader than the duty to indemnify, the Court

should also enter summary judgment in favor of Travelers on the issue of indemnity.

<u>**RECOMMENDATION**</u>

 In accordance with the foregoing, the undersigned respectfully recommends that

Travelers' Motion for Summary Judgment Regarding the Duty to Defend (DE# 25,

9/29/16) be **GRANTED** and Plaintiff, Witkin Design Group, Inc.'s Motion for Summary

Judgment Regarding the Duty to Defend (DE# 29, 10/11/16) be **DENIED**.

 The parties shall have fourteen (14) days from the date of being served with a

copy of this Report and Recommendation within which to file written objections, if any,

with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **15th** day of December, 2016.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
United States District Judge Moreno
All counsel of record